# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce J. Chasan, :
                Appellant :
                 :
        v. :
                 :
Correale F. Stevens, Carolyn H. : No. 169 C.D. 2021
Nichols, and Mary P. Murray : Argued: June 23, 2022


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: July 26, 2022


Bruce J. Chasan (Chasan) appeals from the January 25, 2021[1] order of the Philadelphia County Court of Common Pleas (trial court) sustaining preliminary objections filed by three judges of the Pennsylvania Superior Court to an amended complaint filed by Chasan and dismissing the amended complaint with prejudice. Upon review, we affirm.

---

[1] The trial court dated the order January 20, 2021 and docketed the order on January 25, 2021. *See* Trial Ct. Order, 1/25/21. Chasan timely appealed to this Court on February 23, 2021. *See* Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken.").

# I. Background

The amended complaint dismissed by the trial court contained one count—a claim alleging defamation on the basis of an opinion authored by the Honorable Correale F. Stevens and joined by the Honorable Carolyn N. Nichols and the Honorable Mary P. Murray (collectively, Judges) in the matter of *Law Office of Bruce J. Chasan and Bruce Chasan, Esq. v. Freundlich & Littman LLC and Gregory Littman, Esq.* (Pa. Super., No. 2928 EDA 2016, filed Jan. 29, 2019)[2] (Judicial Opinion). The following is a brief recitation of the relevant factual and procedural background pertaining to the Judicial Opinion and the ensuing defamation litigation.

Chasan previously served as counsel for Edward Feierstein (Feierstein), the defendant in a property damage dispute. *See* Am. Complaint, 10/25/20 at 10-11, ¶¶ 30-31, Reproduced Record (R.R.) at 26a-27a. In early 2014, opposing counsel, Gregory Littman (Littman), sent two letters to Chasan and four other individuals and one letter to a trial court judge, who had previously been assigned to decide motions in the matter, containing various allegations that Chasan had engaged in unethical conduct over the course of litigating the property damage dispute.[3] *See id.* at 13-15,

---

[2] Chasan asserts that, though previously identified as Freunslich & Littman, the firm's correct name is in fact Freundlich & Littman, and that "[t]his error was made somewhere in the litigation and went uncorrected." Chasan's Br. at 6 n.4.

[3] Specifically, the first letter alleged that Chasan and Feierstein had engaged in witness intimidation by informing Littman's brother (who had been subpoenaed to testify in a separate, unrelated criminal trial against Feierstein) of their intent to sue Littman. *See* Am. Complaint, 10/25/20 at 13, ¶ 46, R.R. at 29a. This letter further questioned Feierstein's participation in the property damage litigation when he had "recently" claimed mental incompetence in order to abstain from participating in the separate criminal proceedings and had checked himself into a mental health facility. *See id.* The second letter expressed Littman's intent to file an ethics complaint in the event that Chasan continued to represent Feierstein and alleged that Feierstein had defrauded the trial court. *See id.* at 14-15, ¶ 49, R.R. at 30a. This letter further asserted that Chasan had abused the legal process for purposes of intimidation. *See id.* In the third letter,

¶¶ 46, 49 & 51, R.R. at 29a-31a. In 2015, Chasan sued Littman and Littman's law firm for defamation on the basis of these letters. *See id.* at 10, ¶ 30, R.R. at 26a. Chasan, Littman, Littman's brother and several of the recipients of Littman's letters provided deposition testimony. *See id.* at 16, ¶ 54, R.R. at 32a. At close of discovery, Littman filed a motion for summary judgment, which the trial court granted in August 2016. *See id.* at 17, ¶ 55 & 58, R.R. at 33a.

Chasan appealed to the Pennsylvania Superior Court, which affirmed the trial court's grant of summary judgment through the Judicial Opinion.[4] *See* Judicial Opinion at 1-17, R.R. at 59a-75a. In January 2020, Chasan filed a complaint against Judges requesting declaratory relief on the basis of certain allegedly defamatory statements contained in the Judicial Opinion. *See* Complaint, 1/27/20 at 2, ¶ 5, Original Record (O.R.) at 9. Trial Ct. Docket at 3, R.R. at 3a. Judges filed preliminary objections, which the trial court sustained, dismissing Chasan's claims without prejudice on grounds of judicial immunity, sovereign immunity and judicial privilege. Trial Ct. Docket at 11, R.R. at 11a. In November 2020, Chasan filed an amended complaint requesting that the trial court "issue a decision . . . holding that [he] was defamed by [the Judicial Opinion]."[5] *See* Am. Complaint, 10/25/20 at 39-

Littman informed the trial court of his belief that Chasan and Feierstein were acting in bad faith and requested that the court hold a conference between the parties. *See id.* at 15, ¶ 51, R.R. at 31a.

[4] The Superior Court initially denied the appeal on the basis that Chasan had waived the issues sought to be appealed. *See* Am. Complaint, 10/25/20 at 24, ¶ 81, R.R. at 40a. Chasan appealed to the Pennsylvania Supreme Court, which remanded the matter to the Superior Court for consideration of the merits of the appeal. *See id.* at 25, ¶ 86, R.R. at 41a.

[5] In his prayer for relief, Chasan requested that the trial court "issue a decision in [his] favor . . . holding that [he] was defamed by [the Judicial Opinion] . . . in at least the following holdings":

> (a) The finding that "Chasan could not identify any statements in [Littman's] correspondence . . . that were untrue." . . .

40, R.R. at 55a-56a; *see also* Trial Ct. Docket at 12, R.R. at 12a.  Chasan requested as "an appropriate remedy" the issuance of "a non-jury decision that [he] can prove the elements of a defamation claim (42 Pa.C.S.[] § 8343(a))" on the basis of "a number of defamatory 'factual' statements made by [Judges] . . . *without jurisdiction*."  Am. Complaint, 10/25/20 at 2 & 5-6, ¶¶ 5 & 16, R.R. at 18a-19a & 21a-22a.  Chasan clarified that he "[did] not seek monetary damages for the harm," although he "intend[ed] to prove all elements of a defamation claim within the meaning of 42 Pa.C.S.[] § 8343(a)."  *Id.* at 2-3, ¶ 5, R.R. at 18a-19a.  Chasan asserted that "[s]uch relief is a pseudo-declaratory judgment, albeit it is not pursuant to the Declaratory Judgment[s] Act."[6]  *Id.* at 6, ¶ 16, R.R. at 22a.  Chasan further specified that he "does not seek reversal of the [Judicial Opinion]."  *Id.* at 3, ¶ 5, R.R. at 19a.

---

> (b) The finding that [] Littman had a reasonable belief that Chasan was both aware of and participating in [] Feierstein's acts of witness intimidation. . . .
>
> (c) The finding that Chasan was involved in an unethical scheme to conceal from the trial court that Feierstein was incompetent to sign a verification for an answer, new matter and counterclaim to the [c]omplaint filed [in the property damage case] . . . seeking damages from Feierstein for allegedly causing a water leak that damaged their condo unit.

Am. Complaint, 10/25/20 at 39-40, R.R. at 55a-56a (quoting Judicial Opinion at 16).  Elsewhere in the amended complaint, Chasan challenged the statement in the Judicial Opinion that "deposition testimony evince[d] that [] Littman had a reasonable belief that [] Feierstein's signed verification in support of the counterclaim in the [property damage case] was not valid and that the counterclaim itself had been filed for an improper purpose."  *Id.* at 35, ¶ 89, R.R. at 41a (quoting Judicial Opinion at 11, R.R. at 69a).  The other excerpts from the Judicial Opinion singled out by Chasan largely consisted of Judges' recitation of deposition testimony and other evidence provided in connection with Chasan's defamation suit against Littman.  *See, e.g.*, *id.* at 27 & 34, ¶¶ 95 & 118, R.R. at 43a & 50a (citing Judicial Opinion at 9-10 & 23).

[6] 42 Pa.C.S. §§ 7351-7541.

4

On December 15, 2020, Judges filed preliminary objections to Chasan's amended complaint, asserting the defenses of judicial immunity, judicial privilege, sovereign immunity and high public official immunity and contending that Chasan failed to state a claim for declaratory relief. *See* Preliminary Objections, 12/15/20 at 1-23, O.R. at 983-1005. Chasan and Judges filed a joint stipulation indicating their agreement to extend the deadline to respond to Judges' preliminary objections to February 4, 2021 due to the upcoming relocation of Chasan's office. *See* Stipulation at 1-2, O.R. at 1041-42. However, on January 20, 2021, the trial court denied the extension and sustained Judges' preliminary objections for the reasons set forth by this Court in the unrelated matter *Chasan v. Platt*, 244 A.3d 73 (Pa. Cmwlth. 2020) (*Chasan I*),[7] thereby dismissing Chasan's amended complaint with prejudice and without leave to file further amendments. Trial Ct. Order, 1/25/21, R.R. at 107a. *Id.* Chasan thereafter appealed to this Court. *See* Notice of Appeal, 2/23/21.[8]

---

[7] In *Chasan I*, this Court affirmed the trial court's determination that the doctrine of judicial immunity barred Chasan's claim alleging defamatory content in a judicial opinion rendered by three other Superior Court judges in the matter of *Carmen Enterprises, Inc. v. Murpenter, LLC*, 185 A.3d 380 (Pa. Super. 2018). *See Chasan I*, 244 A.3d at 76 & 84. We also affirmed the trial court's decision to sustain Judges' demurrer on the basis that Chasan failed to state a cognizable claim for declaratory relief. *See id.* at 84. *Carmen* had disposed of cross-appeals contesting the amount of attorney's fees awarded for Chasan's work on behalf of a travel agency of which he was president and sole shareholder. *See id.* at 76.

[8] On March 26, 2021, Chasan filed an application for relief requesting, *inter alia*, that this Court issue an order directing the trial court to issue an opinion expounding upon its January 25, 2021 order, and compelling the trial court to order Chasan to file a statement of errors complained of on appeal. *See* Appl. for Relief, 3/26/21 at 3 (citing Pa.R.A.P. 1925(a), (b)). We denied Chasan's request by order dated April 16, 2021. *See* Cmwlth. Ct. Order, 4/16/21.

## II. Issues

Determining whether the doctrine of judicial immunity bars a claim "requires a two-part analysis: first, whether the judge has performed a judicial act; and second, whether the judge has some jurisdiction over the subject matter before him." *Langella v. Cercone*, 34 A.3d 835, 838 (Pa. Super. 2011).

Before this Court,[9] Chasan argues that the trial court erred in determining that the doctrine of judicial immunity barred his claim against Judges. *See* Chasan's Br. at 33. Chasan alleges that Judges rendered fact-finding and credibility determinations in the Judicial Opinion and that doing so did not constitute a judicial act. *Id.* at 43-44 (citing *Petition of Dwyer*, 406 A.2d 1355, 1361 (Pa. 1979)).[10]

---

[9] An appellate court's standard of review of an order of the trial court sustaining or overruling preliminary objections is to determine whether the trial court committed an error of law. *Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526, 530 (Pa. Super. 2017). A court may sustain preliminary objections only when, based on the facts pleaded, it is clear and free from doubt that the plaintiff will be unable to prove facts legally sufficient to establish a right to relief. *Feldman v. Hoffman*, 107 A.3d 821, 826 n.7 (Pa. Cmwlth. 2014). In evaluating the legal sufficiency of a challenged pleading, the court must accept as true all well-pleaded material and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. *Id.* The court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the challenged pleading. *Thomas v. Corbett*, 90 A.3d 789, 794 (Pa. Cmwlth. 2014). Whether a particular immunity applies is a question of law as to which our standard of review is *de novo* and our scope of review is plenary. *Feldman,* 107 A.3d at 826 n.7.

[10] Chasan also asserts that a judge's conduct cannot constitute a judicial act in the absence of subject matter jurisdiction: "[s]imply put: no jurisdiction, no judicial act." Chasan's Br. at 39 (citing *Langella*, 34 A.3d at 839). Chasan points out that in *Langella*, the Superior Court held that a judge failed to establish immunity from suit where he "lacked jurisdiction over the subject matter before him and [] his actions were not judicial acts." *Id.* In *Langella*, however, the judge's conduct that was not subject to immunity occurred in a private meeting in his chambers with a *former* litigant. There was no longer a pending case, so the judge had no jurisdiction over the former litigant and, by definition, was not engaged in any judicial acts. *Id.* at 839-40. Here, by contrast, Chasan complains about language in a written judicial opinion, the quintessential function of an appellate judge.

Further, Chasan contends that, despite possessing subject matter jurisdiction over his appeal, Judges acted without jurisdiction when they "usurped" the trial court's authority by rendering factual findings and credibility determinations. *See id.* at 33-40 (citing *Bradley v. Fisher*, 80 U.S. 335, 351-52 & 357 (1872); *Stump v. Sparkman*, 435 U.S. 349, 356 n.6 (1978)). Chasan maintains that the Judicial Opinion "was not just appalling, it was libelous and made without jurisdiction" because Judges "tried the case on the summary judgment record as if they were a court of original jurisdiction." *Id.* at 59. For instance, Chasan contends Judges usurped a jury function and improperly found as fact that Littman had a "reasonable belief" that Chasan was involved in unethical conduct and, thus, concluded that Chasan was "guilty" of professional misconduct, including witness intimidation. *Id.* at 37 & 58-59. Chasan also contends that Judges' "efforts devolved into prohibited fact-finding and credibility assessments, which were outside [their] jurisdiction," because Judges cited record evidence in support of the trial court decision when the trial court judge had "cited no evidence whatsoever from the summary judgment record." *Id.* at 45. Further, Chasan maintains that in rendering the Judicial Opinion, Judges performed "quintessential jury functions" by "decid[ing] what they would give weight to and what they would ignore" in affirming the trial court's grant of summary judgment. *Id.* at 37. Asserting that "Judges totally disregarded [his] evidence *en route* to making their own findings of fact" and "cherry-picked" portions of "the summary judgment record to fashion a decision in [] Littman's favor," Chasan contends that, instead, Judges "simply [sh]ould have evaluated [his] evidence and decided whether it was sufficient to show

7

disputes of material fact[.]" *Id.* at 36-37 & 44.[11] Thus, Chasan maintains that he "had no satisfactory appellate remedy once the [Judicial O]pinion was issued," insisting that "[t]his Court should not shrink from a searching review of [Judges'] conduct in this case and [should] call it out as impermissible and non-jurisdictional misconduct." *Id.* at 45 & 60.

Further, Chasan contends that his request for a "non-jury decision" establishing his ability to prove the elements of a defamation claim does not constitute a request for declaratory judgment "within the meaning of the Declaratory Judgment[s] Act." *Id.* at 47 (citing Am. Complaint, 10/25/20 at 2, ¶ 5, R.R. at 18a-19a). Rather, Chasan contends that "[w]hat is sought is a non-jury 'decision' as described in Pa.R.Civ.P. 238(a)(1)."[12] *Id.* at 47. Moreover, Chasan contends that the trial court should have overruled Judges' preliminary objections due to Judges' failure to separately plead judicial immunity as an affirmative defense. *Id.* at 54. Chasan also asserts that the trial court's "precipitous dismissal" of his amended complaint before he had the opportunity to respond to Judges' preliminary objections "was procedurally defective and unfair," as he had not waived the right to object to Judges' preliminary objections.[13] *Id.* at 55-56. Chasan maintains that

---

[11] Chasan posits that Judges would have comported with the appellate jurisdiction of the Superior Court by holding simply: "We affirm on the basis of [the trial court judge's] reasoning in her [Pa.R.A.P.] 1925(a) opinion." Chasan's Br. at 44-45.

[12] We observe that Pennsylvania Rule of Civil Procedure 238(a)(1) does not provide for the type of "non-jury decision" requested by Chasan. *See* Pa.R.Civ.P. 238(a)(1) (providing that "[a]t the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial . . . , and shall become part of the verdict, decision or award").

[13] *See discussion infra* pages 19-20.

the parties had stipulated to an extension of time, as permitted by Pennsylvania Rule of Civil Procedure 248, Pa.R.Civ.P. 248, and that the trial court judge "wrongly rejected the stipulation, as if to abrogate [this rule]." *Id.* at 55 n.15.

Chasan, therefore, requests that this Court reverse the trial court's dismissal of his amended complaint and remand the matter for further proceedings. *Id.* at 60.[14]

Judges counter that judicial immunity bars Chasan's defamation claim because rendering a judicial opinion is a function normally performed by a judge and, therefore, constitutes a judicial act. *See* Judges' Br. at 16 (citing *Mireles v. Waco*, 502 U.S. 9, 13 (1991)).[15] Further, Judges note that in *Chasan I*, this Court rejected Chasan's identical assertion that the appellate judges accused of defamation in that case acted without subject matter jurisdiction by allegedly rendering factual findings and credibility determinations. *Id.* at 15 (citing *Chasan I*, 244 A.3d at 83).

---

[14] Chasan made clear in his amended complaint that he "[does] not seek monetary damages for the harm[.]" Am. Complaint, 10/25/20 at 2-3, ¶ 5, R.R. at 18a. In his appellate brief, as well as at oral argument, Chasan acknowledged this waiver of his claim for monetary damages, yet maintains that Judges' loss of judicial immunity also renders them liable for damages. *See* Chasan's Br. at 46-47. Chasan insists that the fact he "has waived monetary damages does not mean he does not have any," asserting the allegation that he has committed the criminal offense of witness intimidation is libelous *per se*, and, as such, does not require proof of special damages. *Id.* at 47 (citing *Baird v. Dun & Bradstreet, Inc.*, 235 A.2d 166, 171 (Pa. 1971)) (holding that a false statement involving immorality or the commission of a crime is defamatory *per se* and, therefore, does not require proof of special damages). We are unpersuaded by Chasan's argument and find that he has indeed waived any claim for monetary damages. *See Buck v. Beard*, 879 A.2d 157, 161-62 (Pa. 2005) (holding that issue omitted from appellant's complaint in mandamus was not subject to appellate review).

[15] Judges also cite *Sibley v. Lando* (S.D. Fla., No. 03-21728-CIV, filed Apr. 8, 2005), 2005 WL 6108991, at *4, *aff'd*, 437 F.3d 1067 (11th Cir. 2005), in which the United States District Court for the Southern District of Florida held that the judges were "absolutely immune" from constitutional claims filed against them, "despite allegations that they issued an opinion which relied on matters outside the appellate record," as the judges "clearly performed a judicial act" when "they decided an appeal brought by [a plaintiff] and issued a written opinion."

Regardless, Judges maintain that, assuming *arguendo* that Chasan is correct in alleging impermissible findings of fact and credibility determinations, such findings and determinations nevertheless would constitute a violation of the applicable standard of review and an error of law, rather than the absence of subject matter jurisdiction. *Id.* at 16.

Judges contend they possessed subject matter jurisdiction over Chasan's appeal.[16] *See id.* at 14-15 (citing Section 742 of the Judicial Code, 42 Pa.C.S. § 742).[17] Judges also assert that Chasan failed to state a claim for declaratory

---

[16] Judges assert that Chasan has in fact acknowledged the Superior Court's jurisdiction over his appeal. *See* Judges' Br. at 15 (citing Am. Complaint at 3, ¶ 9, R.R. at 19a (stating that "[t]he Superior Court's appellate jurisdiction was based on 42 Pa.C.S.[] § 742, regarding appeals from the Courts of Common Pleas")). We note that Chasan does not dispute that Judges initially possessed subject matter jurisdiction to review the trial court's dismissal of his amended complaint; rather, Chasan asserts that Judges acted without jurisdiction by disregarding their appellate role. *See* Chasan's Br. at 36-40; *see also id.* at 44 ("[T]his case cannot be disposed of on immunity grounds just because [] Judges had jurisdiction over Chasan's appeal.").

[17] Pursuant to Section 741 of the Judicial Code,

> [t]he Superior Court shall have no original jurisdiction, except in cases of mandamus and prohibition to courts of inferior jurisdiction where such relief is ancillary to matters within its appellate jurisdiction, and except that it, or any judge thereof, shall have full power and authority when and as often as there may be occasion, to issue writs of habeas corpus under like conditions returnable to the said court.

42 Pa.C.S. § 741. Section 742 further provides that

> [t]he Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

42 Pa.C.S. § 742.

10

relief, because his amended complaint requested only that the trial court issue a declaration with respect to past conduct. *Id.* at 19-20 (citing *Chasan I*, 244 A.3d at 84); *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016) (request for declaration that judge previously violated plaintiff's constitutional rights was "not a proper use of a declaratory judgment")).[18] Further, Judges maintain that the trial court did not err in sustaining their preliminary objections before Chasan filed an objection in response. *See id.* at 35-37. Judges also contend that raising the affirmative defense of judicial immunity as a preliminary objection, rather than as separately pleaded new matter, was permissible under the circumstances of the case, because the applicability of the defense was apparent from the face of the amended complaint. *See id.* at 37-41 (citing *R.H.S. v. Allegheny Cnty. Dep't of Hum. Servs., Off. of Mental Health*, 936 A.2d 1218, 1227 (Pa. Cmwlth. 2007)).

## III. Discussion

## A. Immunity

"[T]he law in Pennsylvania is well established that judges are absolutely immune from liability for damages when performing judicial acts, even if their actions are in error or performed with malice, provided there is not a clear absence of all jurisdiction over the subject matter and person." *Feingold v. Hill*, 521 A.2d 33, 36 (Pa. Super. 1987); *see also Robinson v. Musmanno* (Pa. Cmwlth., No. 39 C.D. 2010, filed May 28, 2010), slip op. at 3 (citing *Stump*) ("[A] judge is immune from liability when the judge has jurisdiction over the subject matter before him and

---

[18] Judges suggest that Chasan could have sued for defamation in tort. *See* Judges' Br. at 11.

is performing a judicial act.").[19]  "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles*, 502 U.S. at 11 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  "[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley*, 80 U.S. at 347.  "This immunity . . . is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (citation and quotation marks omitted).

Here, Chasan sued Judges on the basis of the content of the Judicial Opinion.  *See, e.g.*, Am. Complaint, 10/25/20 at 39-40, R.R. at 55a-56a (requesting that the trial court "issue a decision . . . holding that [he] was defamed by [the Judicial Opinion]").  Chasan alleges that Judges impermissibly decided questions of fact and credibility in rendering the Judicial Opinion, and that doing so did not qualify as a judicial act for purposes of judicial immunity.  *See* Chasan's Br. at 43-44. "[W]hether an act by a judge is a 'judicial' one relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (brackets omitted) (citing *Stump*, 435 U.S. at 362).  Issuing an opinion disposing of an appeal is a function normally performed by an appellate judge.  *See Chasan I*, 244 A.3d at 82 (citing *Musmanno*) (holding that "[j]udges'

---

[19] This Court's unreported memorandum opinions issued after January 15, 2008 may be cited for their persuasive value.  210 Pa. Code § 69.414(a).

issuance of the [j]udical [o]pinion was beyond peradventure"); *cf. Langella*, 34 A.3d at 840 (citing *Mireles*) ("[A] judge's actions, even if excessive, are protected by judicial immunity if they serve a judicial function.").[20]  Assuming *arguendo* that Chasan is correct in asserting that Judges disregarded their appellate role, his attempt to establish that issuing the Judicial Opinion did not constitute a judicial function by parsing out portions allegedly demonstrating that Judges usurped the role of the trial court nevertheless lacks merit.  *See Bradley*, 80 U.S. at 357 ("[The allegedly] erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected the validity of the act, did not make the act any less a judicial act[.]").  Thus, we agree with Judges that issuing the Judicial Opinion disposing of Chasan's appeal constituted a judicial act.  *See Chasan I*, 244 A.3d at 83-84 (stating that comments made by a judge while acting as a judge "[meet] the threshold for a judicial act"); *see also Bradley*, 80 U.S. at 347 (holding that "the order for the entry of which the suit is brought, was a judicial act, done by the defendant[] as the presiding justice of a court of general criminal jurisdiction").

Mirroring his argument in connection with the "judicial act" requirement, Chasan also contends that Judges forfeited jurisdiction by allegedly deciding questions of fact and credibility in the Judicial Opinion.  We agree with Judges that they acted within their subject matter jurisdiction in rendering the Judicial Opinion.[21]

---

[20] In *Chasan I*, this Court also noted Chasan's acknowledgment in his reply brief that "writing an appellate opinion is a 'judicial act.'"  *Chasan I*, 244 A.3d at 82 (quoting Appellant's Reply Br. at 6).

[21] Black's Law Dictionary defines the term "subject[]matter jurisdiction" as "[j]urisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things."  JURISDICTION, Black's Law Dictionary (Westlaw,

Chasan asserted an identical argument in *Chasan I*, which this Court rejected:

> [Sections 741 and 742 of the Judicial Code, 42 Pa.C.S. §§ 741-42,] pertain to the propriety of subject matter jurisdiction over the issue in dispute and the parties to the dispute. Neither statutory provision prohibits or directly addresses the authority of an appellate judge to engage in fact-finding or make credibility determinations. Those aspects of decision-making include the role of the court and the type of review, *i.e.*, how the court renders a decision, not whether the court may decide the matter before it. It is the former category of decision-making of which [Chasan] complains.
>
> While [appellate j]udges lack the power or authority to make credibility determinations or find facts, they had proper jurisdiction to address [Chasan's] appeal of [a f]ee [a]ward because a contract dispute with a non-governmental party on appeal from a court of common pleas is properly within its appellate jurisdiction under Section 742 of the Judicial Code. . . .

*Chasan I*, 244 A.3d at 83 (citing *Langella*). Likewise, here, Chasan's allegation that Judges erroneously decided questions of fact and credibility does not bear upon the Court's subject matter jurisdiction over his appeal. *See id.*

In *Bradley*, the United States Supreme Court held that "judges . . . are not liable to civil actions for their judicial acts, *even when such acts are in excess of their jurisdiction*, and are alleged to have been done maliciously or corruptly." *Id.* at 351. The Court explained further:

> A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over

11th ed. 2019). Further, the Pennsylvania Supreme Court has explained that "jurisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs." *In re Bruno*, 101 A.3d 635, 659 (Pa. 2014) (citation and internal quotation marks omitted).

14

the subject[]matter.  Where there is clearly no jurisdiction over the subject[]matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.  But where jurisdiction over the subject[]matter is invested by law in the judge, or in the court which he holds, *the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case*, although upon the correctness of his determination in these particulars the validity of his judgments may depend.  Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority.  But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject[]matter is invoked.

*Bradley*, 80 U.S. at 351-52 (emphasis added).  Similarly, here, Chasan's allegation that Judges disregarded their appellate role by rendering factual and credibility determinations implicates whether Judges issued the Judicial Opinion in excess of jurisdiction, rather than in the absence of jurisdiction.  *See id.*  Because judicial immunity from suit also extends to judicial acts performed in excess of jurisdiction, Chasan's reasoning is devoid of merit.  *See id.* at 351.

15

## B. Pleading Immunity by Preliminary Objection

Chasan further contends that the trial court erred in sustaining Judges' preliminary objection asserting judicial immunity, because Judges improperly pleaded this affirmative defense by preliminary objection rather than as new matter. We disagree.

> As we have explained previously,

> although [Pennsylvania Rule of Civil Procedure] 1030[, Pa.R.Civ.P. 1030,] provides affirmative defenses are to be raised as new matter, if it is clear from the face of the complaint that a suit is barred by the defense of immunity the case may be dismissed on preliminary objections. *Wurth by Wurth v. City of Philadelphia*, . . . 584 A.2d 403 ([Pa. Cmwlth.]1990). The rationale for this exception is to avoid unnecessary delay if the complaint is clearly barred by the doctrine of immunity.

*Logan v. Lillie*, 728 A.2d 995, 998 (Pa. Cmwlth. 1999) (holding that "it was proper for the trial court to consider the doctrine of immunity on preliminary objections" where defendants' status as judicial officers rendered the applicability of the defense of sovereign immunity "clear from the face of the complaint"); *see also Faust v. Dep't of Revenue*, 592 A.2d 835, 838 n.3 (Pa. Cmwlth. 1991) (explaining that "sovereign immunity is an affirmative defense which ordinarily should be raised as new matter, but may be raised in preliminary objections when to delay a ruling thereon would serve no purpose"); *Feldman v. Hoffman*, 107 A.3d 821, 832 (Pa. Cmwlth. 2014) (trial court may consider immunity defense raised by preliminary objections even where "plaintiff *did object* . . . where no purpose would be served by a delay in ruling on the matter and it would expedite disposition of the case"). Here, it "is evident on the face of the [amended] complaint" that judicial immunity

16

bars Chasan's claim, because Judges are named defendants and the claim arises from the content of a judicial opinion deciding an appeal over which Judges possessed subject matter jurisdiction. *See Chasan I*, 244 A.3d at 81 (holding that the trial court did not err in considering the defense of judicial immunity raised by Judges as a preliminary objection, explaining that "[b]ecause the [second amended complaint] name[d] [j]udges as defendants for (allegedly defamatory) content in the [j]udicial [o]pinion, the judicial immunity defense is evidence on the face of the complaint"). Further, for the reasons explained above, the window of time in which Chasan was permitted to object to Judges' preliminary objection asserting judicial immunity has long since expired; thus, Chasan has waived any objection on that basis. *See id.* (determining that "[Chasan] offered no cause for delaying consideration to a later stage of the proceedings and did not object to the procedure used for asserting immunity, thus waiving any objection on that ground").

Having exhausted his attempts to challenge the substance of the Judicial Opinion, Chasan instead seeks to undermine the validity of Judges' holding indirectly through his "pseudo-declaratory" defamation action requesting a "non-jury decision" declaring that Judges defamed him. *See* Am. Complaint, 10/25/20 at 2 & 6, ¶¶ 5 & 16, R.R. at 18a & 22a. However, the purpose of the doctrine of judicial immunity is to shield judicial officers from the exact scenario at play here—a dissatisfied litigant suing judges in their individual capacities to contest the outcome of a lawsuit. *See, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 31 (1980) ("Judicial immunity arose because it was in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case without fear of being mulcted for damages [by] an unsatisfied litigant[.]"); *Bradley*, 80 U.S. at 347 ("Liability to answer to everyone who might feel himself aggrieved by the action of

17

the judge[] would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful."); *see also Chasan I*, 244 A.3d at 84 (reasoning that "[w]ere this Court to allow an action seeking revisions in a judicial opinion to proceed, any dissatisfied litigant may then utilize a declaratory judgment action as a sword against the judicial authors of what the litigant perceives is an unflattering or critical opinion").[22]

Accordingly, we agree with Judges that the trial court did not err in dismissing Chasan's suit on the basis of judicial immunity, as it is clear and free from doubt that Judges possessed subject matter jurisdiction over Chasan's appeal and were performing a judicial act by issuing the Judicial Opinion. *See Stump*, 435 U.S. at 362-64; *Feldman*, 107 A.3d at 826 n.7; *see also Chasan I*, 244 A.3d at 83-84 (rejecting Chasan's assertion and "agree[ing] with the [t]rial [c]ourt that the [j]udicial [o]pinion constituted a judicial act that was issued within [j]udges' jurisdiction under Section 742 of the Judicial Code"); *Feingold*, 521 A.2d at 37 (holding that plaintiff "failed to plead any facts which would remove [judge's] cloak of judicial immunity," reasoning that judge possessed jurisdiction over the underlying dispute and, further, that issuing "unfavorable rulings" was "clearly within the scope of [the judge's] authority").[23]

---

[22] Regarding Chasan's assertion that he "had no satisfactory appellate remedy once the Judges' opinion was issued," we note that Chasan pursued recourse by filing a petition for allowance of appeal from the Judicial Opinion, which the Pennsylvania Supreme Court denied. *See* Chasan's Br. at 45; Pa. Supreme Ct. Order, 7/24/19, R.R. at 106a. Further, Chasan stated in his amended complaint that he "does not seek reversal of the [Judicial Opinion]." Am. Complaint, 10/25/20 at 3, ¶ 5, R.R. at 19a.

[23] The trial court sustained Judges' preliminary objections and dismissed Chasan's amended complaint for the reasons set forth in *Chasan I*. *See* Trial Ct. Order, 1/25/21, R.R. at 107a. In *Chasan I*, this Court affirmed the trial court's decision to sustain the judges' preliminary objections on the basis of judicial immunity and Chasan's failure to state a cognizable claim for

18

## C. Stipulated Extension

Chasan also asserts that the "precipitous dismissal" of his amended complaint was "procedurally defective and unfair" because the trial court sustained Judges' preliminary objections even though he had not waived his right to respond. *See* Chasan's Br. at 55-56. Further, Chasan maintains that the trial court "wrongly rejected the stipulation, as if to abrogate [Pennsylvania Rule of Civil Procedure] 248." *Id.* at 55 n.15. We agree with Judges that Chasan is not entitled to relief on this basis.

Pursuant to Pennsylvania Rule of Civil Procedure 248, "[t]he time prescribed by any rule of civil procedure for the doing of any act may be extended or shortened by written agreement of the parties or by order of court." Pa.R.Civ.P. 248. Here, Judges filed preliminary objections to Chasan's amended complaint on December 15, 2020. *See* Trial Ct. Docket at 12, R.R. at 12a. The original deadline to object to Judges' preliminary objections therefore was January 4, 2021. *See* Pa.R.Civ.P. 1026 (providing that, with certain exceptions not applicable here, "every pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading"). The parties filed a joint stipulation indicating their agreement to extend the deadline by which Chasan must respond to Judges' preliminary objections to February 4, 2021. *See* Stipulation at 1-2, O.R. at 1041-42; Trial Ct. Order, 1/25/21, R.R. at 107a. However, the trial court sustained Judges' preliminary objections and dismissed Chasan's amended complaint by order dated

---

declaratory relief as to the alleged defamatory content of the judges' judicial opinion. *See Chasan I*, 244 A.3d at 82-84. Here, Chasan asserts that the trial court erred in sustaining Judges' preliminary objections on the basis of immunity. *See* Chasan's Br. at 33-60. Apart from contending that his request for "pseudo-declaratory judgment" does not in fact constitute a declaratory judgment claim, *see* Chasan's Br. at 47; Am. Complaint, 10/25/20 at 6, ¶ 16, R.R. at 22a, Chasan fails to articulate any challenge to Judges' demurrer.

January 20, 2021 and docketed on January 25, 2021. Trial Ct. Order, 1/25/21, R.R. at 107a.

Chasan is correct that the trial court erred by ignoring the parties' stipulated extension of time, which was expressly authorized by Rule 248. However, Chasan has not established any harm resulting from the timing of the trial court's decision sustaining Judges' preliminary objections, particularly where he has failed to articulate any assertion which, if included in a preliminary objection, would have undermined Judges' immunity defense. *See Haney v. Sabia*, 428 A.2d 1041, 1043 (Pa. Cmwlth. 1981). Therefore, the trial judge's error was harmless.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's order.

_____
CHRISTINE FIZZANO CANNON, Judge

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce J. Chasan,            :

         Appellant      :

                         :

        v.             :

                         :

Correale F. Stevens, Carolyn H.  :   No. 169 C.D. 2021

Nichols, and Mary P. Murray    :

# O R D E R

AND NOW, this 26th day of July, 2022, the January 25, 2021 order of the Philadelphia County Court of Common Pleas is AFFIRMED.

_____

CHRISTINE FIZZANO CANNON, Judge